STATE v. FRITZ MURPH, ROY BUMGARNER, AND WILL BROWN.

(Filed 24 November, 1937.)

**Robbery § 3—Evidence identifying defendant as perpetrator of crime held sufficient to be submitted to the jury.**

The State's evidence established that the pay roll of a mill was being counted out and put into envelopes by employees when two men came in, threatened the employees with pointed pistols, made the employees get on the floor, and took the money. One defendant did not appeal from his conviction as one of the perpetrators of the crime. The other defendant appealed from the court's refusal to grant his motion to nonsuit. Several employees, present at the time the crime was committed, testified that the voice, size, and general appearance of the appealing defendant were

similar to those of the man who, together with the defendant who was convicted, committed the crime, and there was testimony of a taxicab driver that appealing defendant, shortly after the crime was committed, aided his codefendant to get to his home in another city by taxicab. *Held:* The evidence was sufficient to be submitted to the jury upon the question of the identity of the appealing defendant as one of the perpetrators of the crime.

APPEAL by defendant Roy Bumgarner from *Sink, J.,* at June Special Term, 1937, of MECKLENBURG. No error.

The defendants in this action were tried on an indictment in which they were charged with robbery by the use or threatened use of firearms, in violation of sec. 1 of ch. 187, Public Laws of North Carolina, 1929, N. C. Code, sec. 4267(a).

As shown by the verdict, the jury found that each of the defendants is guilty as charged in the indictment.

From judgment that he be confined in the State's Prison for a term of not less than seven or more than ten years, the defendant Roy Bumgarner appealed to the Supreme Court, assigning as error the refusal of the court to allow his motion for judgment as of nonsuit. C. S., 4643.

*Attorney-General Seawell and Assistant Attorneys-General McMullan and Bruton for the State.*
*Hugh G. Mitchell for defendant.*

CONNOR, J. At about 2:15 p. m. on 26 May, 1937, a blue Ford automobile stopped on the street in front of the office of the Cornelius Cotton Mill, in Cornelius, N. C. There were three men in the automobile, two on the front seat and one in the rear seat. Two of the occupants of the automobile got out and went at once into the office of the Cornelius Cotton Mill, each armed with a pistol. As they entered the office they pointed their pistols at the employees at work in the office and threatened to shoot them if they or either of them refused to obey their orders. The men ordered each of the employees, who were young women, to get down on the floor of the office and to remain there. They did so. One of the men thereupon gathered up the money which was lying on a desk in the office. This money consisted of bills of various denominations and had just been brought to the office from the bank for the purpose of paying off the employees of the cotton mill. After the money, amounting to about $3,622.92, had been gathered up by them, the men left the office, taking the money with them, got into the automobile, and drove away rapidly.

A few days after the robbery the defendants were arrested and charged with the robbery of the Cornelius Cotton Mill.

At the trial there was evidence tending to identify the defendant Fritz Murph as one of the men who got out of the automobile and went into the office of the cotton mill and there, by the threatened use of his pistol, put the employees of the cotton mill then in the office in fear of death or great bodily harm, and thereby feloniously took and carried away the money of the Cornelius Cotton Mill. This evidence was submitted to the jury who found that the defendant Fritz Murph is guilty of the felony charged in the indictment. He did not appeal from the judgment of the court that he be confined in the State's Prison for a term of not less than seven or more than ten years.

There was evidence tending to show that the defendant Will Brown is one of the three men who were in the automobile as it approached the office of the Cornelius Cotton Mill. There was no evidence tending to show that he is one of the two men who got out of the automobile and went into the office of the cotton mill and there committed the crime charged in the indictment. The verdict of guilty as to the defendant Will Brown was set aside by the judge, and upon his suggestion and with his approval the action as to the defendant Will Brown was nol prossed with leave by the solicitor for the State.

There was no evidence at the trial tending to identify positively the defendant Roy Bumgarner as one of the three men who were in the automobile when it stopped on the street in front of the office of the Cornelius Cotton Mill, or as one of the two men who got out of the automobile and went into the office of the cotton mill and there committed the crime charged in the indictment. There was, however, evidence tending to show facts and circumstances from which the jury could find that the defendant Roy Bumgarner is one of the two men who got out of the automobile, went into the office of the Cornelius Cotton Mill, and there committed the said crime.

Frank Stough, witness for the State, testified as follows:

"I am treasurer of the Cornelius Cotton Mill. At about 2:15 on 26 May, 1937, as I was returning to the office at the mill from the post office I noticed a blue Ford automobile standing on the street in front of the office. There was a man in the automobile. I walked into the office and noticed one of the employees—a young woman—kneeling down on the floor as if she was looking for change. I looked up and saw a boy with a pistol drawn on her. I identify the defendant Fritz Murph as the boy who held the pistol drawn on her. He turned and pointed the pistol at me. He ordered me to get down on the floor. I did so.

"There was another man in the office with the defendant Fritz Murph. I did not see his face and cannot identify the defendant Roy Bumgarner as the other man in the office with the defendant Murph. I have observed the defendant Roy Bumgarner. He is of about the size and

weight of the other man. Both Murph and the other man had on caps and goggles. The other man also had a pistol. He scooped up the money on the desk in the office. He and Murph then left the office, taking the money with them. The money consisted of bills of various denominations and amounted to $3,622.92. I had never seen Murph or the other man prior to the robbery. I identify Murph by the contour of his face, his height and size. I saw his face for about five or ten seconds."

Miss Alice Stough, one of the employees of the Cornelius Cotton Mill, who was in its office at the time of the robbery, testified as follows:

"I was sitting in the office of the Cornelius Cotton Mill at about 2:15 p.m. on 26 May, 1937, with Miss Lottie Washam and Miss Willie Fiddler. They were both employees of the cotton mill. I was counting money and they were putting the money, as I counted it, into envelopes. I saw a blue Ford automobile stop at the sidewalk in front of the office. Two men got out of the automobile and came into the office. Both had pistols. They told us to get down on the floor of the office. We obeyed. They covered us with their pistols. One of the men gathered up the money. Both left the office, taking the money with them. They left in the automobile.

"I cannot identify either of the two men who were in the office. I heard one of them talk about four times, and the other once. I have heard the defendant Fritz Murph talk twice since the robbery. I think his voice is the voice of one of the men who was in the office.

"I have heard the voice of the defendant Roy Bumgarner since 26 May, 1937. I think his voice is the voice of one of the men who was in the office that day, whose voice I heard only once. The size of the defendants Murph and Bumgarner is about the size of the men who were in the office. I cannot positively identify the defendant Roy Bumgarner, by his voice or his size, as one of the two men who came into the office and took and carried away the money of the Cornelius Cotton Mill."

Miss Willie Fiddler, one of the employees of the Cornelius Cotton Mill who was in its office at the time of the robbery, as a witness for the State, testified as follows:

"I was sitting at Miss Stough's desk in the office of the Cornelius Cotton Mill at about 2:15 p. m. on 26 May, 1937, beside Miss Washam. Two men came into the office, each armed with a pistol. Both had on unionalls; both had on goggles; both had their caps pulled down over their eyes; both had on rubber gloves. The smaller of the two men told us to get down on the floor of the office. We did so. He then picked up the money which was lying on the desk. Both men then left the office, taking the money with them. They went out to the automobile, got in and drove away rapidly.

"I have seen the defendant Fritz Murph and the defendant Roy Bumgarner since the robbery. I cannot positively identify either of them as one of the men who were in the office and who took and carried away the money of the Cornelius Cotton Mill. I have heard both defendants speak since the robbery. Their voices sounded like the voices of the men who were in the office. I think the defendant Fritz Murph and the defendant Roy Bumgarner are the men who were in the office. I know the defendant Will Brown. I do not think he is one of the men who committed the robbery."

Miss Lottie Washam, one of the employees of the Cornelius Cotton Mill, who was in its office at the time the robbery was committed, as a witness for the State, testified as follows:

"At about 2:15 p.m. on 26 May, 1937, I was sitting in the office of the Cornelius Cotton Mill, with my back toward the door. Two men came from a blue automobile which had stopped on the street in front of the office into the office. One was a little taller than the other. The smaller man held a pistol on us and ordered us to get down on the floor. We did so. I have not heard the voice of either of the defendants since the robbery. I have not seen them since the robbery until today. From what I now observe I notice that the size of the defendant Murph corresponds with the size of the smaller man who came into the office. I did not see the larger of the two men who came into the office well enough to compare his size with the size of the defendant Roy Bumgarner."

J. W. Auten, who operates a Ford automobile agency at Huntersville, N. C., as a witness for the State, testified as follows:

"On the night of 25 May, 1937, a new blue de luxe Ford sedan was stolen from my garage. We recovered the automobile about six miles east of Mooresville, N. C. It was in the bushes, about 100 yards from the main road. I saw the defendant Fritz Murph at my place of business about a week before the robbery. He was talking about trading automobiles with me. I do not know the defendant Roy Bumgarner."

Roy Waugh, a taxi driver, who lives at Mooresville, N. C., as a witness for the State, testified as follows:

"I know the defendants Fritz Murph and Roy Bumgarner. I saw them on the night after the robbery. I saw Bumgarner at Childress' Service Station, which is just beyond the city limits of Mooresville. He told me that he wanted to go to Lexington, N. C. I told him that I would take him to Lexington in my taxicab for $4.00 He said, 'Let's go down to the lower end of the mill.' He and a girl who was with him got into the taxi, and I drove at his direction to a house. He got out of the taxi and went into the house. When he came out of the house the defendant Fritz Murph was with him. I drove them uptown, and Bumgarner then told me that he did not want to go to Lexington but that

Murph wanted to do so. I took the defendant Fritz Murph in my taxi to Lexington. He paid me $5.00 for the trip."

On his appeal to this Court the defendant Roy Bumgarner contends that there was no evidence at the trial of this action sufficient as a matter of law to show that he is one of the men who was in the office of the Cornelius Cotton Mill about 2:15 p. m. on 26 May, 1937, and who then and there committed the crime charged in the indictment, and that in the absence of such evidence there was error in the refusal of the trial court to allow his motion for judgment as of nonsuit at the close of all the evidence. This contention cannot be sustained.

The evidence tending to show similarity of voice, size, and general appearance, taken in connection with the evidence tending to show that within a few hours after the robbery the defendant Roy Bumgarner aided the defendant Fritz Murph in leaving Mooresville for his home in Lexington by means of a taxicab was sufficient to identify the defendant Roy Bumgarner as one of the men who, with Fritz Murph, committed the crime charged in the indictment. This evidence was properly submitted to the jury under instructions of the court to which defendant did not except and which are free from error. See *S. v. Lawrence,* 196 N. C., 562, 146 S. E., 395; *S. v. Burleson,* 198 N. C., 61, 150 S. E., 628; Wigmore on Evidence, Vol. 1, sec. 660, p. 1063.

There is no error in the judgment. It is affirmed.

No error.