Doug BENSON, Appellant (Defendant below),

v.

STATE of Wyoming, Appellee (Plaintiff below).

No. 4714.

Supreme Court of Wyoming.

Nov. 3, 1977.

**596**

Gerald M. Gallivan, Director, Wyoming Defender Aid, University of Wyoming, and David C. Marion, Senior Law Student, Laramie, for appellant.

V. Frank Mendicino, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Crim. Div., and Frederick J. Harrison, Legal Intern, Cheyenne, and James N. Wolfe and Harlan Rasmussen, Sheridan County and Pros. Attys., Sheridan, for appellee.

Before GUTHRIE, C. J., McCLINTOCK, RAPER and ROSE, JJ., and ROBERT A. HILL, District Judge.

ROBERT A. HILL, District Judge.

This is an appeal from a judgment and sentence in the District Court of Sheridan upon a conviction of grand larceny for the theft of a mobile home air cooler.[1] The defendant raises error on two points in this appeal.

1. Refusal to give defendant's Instructions A through D was error,[2] asserted as a violation of due process; with particular reference to Instruction C which finds support in the evidence on question of intent.

2. The inadmissibility of a telephone conversation between the defendant and the owner of the mobile home air cooler for lack of a proper foundation.

We will affirm.

The defendant became aware that Don Bulkley was vacating space 18 in the Mountain View Trailer Park, sometimes referred to as York's Trailer Park, in the City of Sheridan on November 12, 1975. Bulkley was making preparations to have his mobile home unit moved to Douglas. He let the defendant know that he was moving and that the trailer space would be available for rent. The defendant immediately sought the proprietor of the trailer court to consummate a rental of the space, as well as two additional spaces.

A check signed by the defendant's wife was tendered to and conditionally accepted by the son of the trailer park owner when the defendant could not immediately locate the owner. The check was later returned and there is some dispute in the testimony when this occurred.

During the period in which the defendant was making his personal arrangements to secure rental of the trailer park space, Bulkley had completed his move from the space. He had removed some of the outside appurtenances from the mobile home to allow for proper towing, among which was the air cooling unit which he laid to the rear of the trailer space lot. Bulkley noted to the defendant, when asked of his intended disposition of the air cooler, that he did not have the means of hauling it.

The defendant, feeling he had firmed his rental arrangement, proceeded to prepare

---

1. "Section 6–132. Grand Larceny.—Whoever feloniously steals, takes and carries, leads or drives away the personal goods of another of the value of $100.00 or upwards, is guilty of grand larceny, and shall be imprisoned in the penitentiary not more than ten years."

2. Defendant offered to the trial court the following instructions:

"A. It is not sufficient, to convict the Defendant of the charge alleged, to find that, after he obtained possession of the personal property, he then formed an intent to steal the personal property in question.

"B. You are instructed that a person who takes another's property intending at the time he takes it to use it temporarily and then to return it unconditionally within a reasonable time, having a substantial ability to do so, lacks the intent to steal required for grand larceny.

"C. You are instructed that a person may take the property of another honestly but mistakenly believing (1) that it is his own property, or (2) that it is no one's property, or (3) though he knows it is another's property that the owner has given him permission to take it as he did.

"If from all the evidence you find any one of the foregoing situations exists in this case, the Defendant lacked the intent to steal required for grand larceny, even though his mistaken but honest belief was unreasonable.

"D. You are further instructed that in order to find the Defendant guilty of grand larceny, you must first determine that at the time he took and carried away the property belonging to another he intended to steal the property."

the space for installation of his mobile home. He was in a hurry to make a trip to Gillette to receive a used pickup truck. His schedule became strained by cleaning the trailer space, taking his wife to the beauty parlor for her beauty appointment and departing from Sheridan on time for his trip to Gillette. He first loaded the air cooler in his pickup truck, took his wife to the beauty parlor and returned to the trailer park to deposit the air cooler in a storage shed located on space no. 9. Apparently, space 9 and space 18 were back to back as the trailer park was laid out.

Bulkley had returned to the trailer park in the meantime to recover his air cooling unit. He could not find it where he left it, and made several telephone calls to locate it, one of which was to the telephone number of defendant's space no. 18. Bulkley testified he had a conversation with a person who identified himself as "Benson." The defendant denies having any telephone conversations with Bulkley; that, in fact, he was enroute to or had arrived in Gillette at the time of the alleged conversation sometime after five o'clock of that evening. There was considerable dispute over the times involved in this sequence of events. We do not have to resolve the factual disputes.

Intervention by the Sheridan Police Department quickly culminated in recovery of the air cooler the following day, November 13, 1975. The defendant was arrested and later convicted of grand larceny.

## REFUSAL TO GIVE INSTRUCTIONS A THROUGH D

The defendant relied upon the lack of intent on the part of the defendant as a defense. Instructions A through D convey the essence of this defense in the various statements of the law embodied in these instructions. Instructions A, B and D emphasized in varying stances that which the court had instructed upon in Instructions 7 (a duplicate of No. 11) and 12. The court said in *Cullin v. State*, 565 P.2d 445, 452 (Wyo.1977):

"* * * The jury was as well specifically instructed to consider all the instructions together and to regard each in the light of all the others. All instructions given must be read together. *State v. Jackson*, 1955, 75 Wyo. 13, 291 P.2d 798. Instructions must be considered as a whole and not according to isolated phrases and paragraphs. *Hoskins v. State*, Wyo.1976, 552 P.2d 342. We hold that all the instructions taken together do not relieve the State of proving intent beyond a reasonable doubt as essential element * * *. There was no plain error."

The difficulty with defendant's Instructions A, B and D is that they are redundant to Instructions 7 and 12; they do not necessarily capture the law consistent with the evidence in this case; and they fail to delineate a defense conforming to the evidence. The duty of the court is discharged when it charges the jury on the general principles applicable in the case. *State v. Chambers*, 70 Wyo. 283, 249 P.2d 158 (1952); *State v. Catellier*, 63 Wyo. 123, 179 P.2d 203 (1947). It is not error to refuse a requested instruction which has otherwise been covered by other instructions, even though the principles therein embodied are correct. *Blakely v. State*, 542 P.2d 857 (Wyo.1975); *Mares v. State*, 500 P.2d 530 (Wyo.1972); *Alcala v. State*, 487 P.2d 448 (Wyo.1971), cert. den. 405 U.S. 997, 92 S.Ct. 1259, 31 L.Ed.2d 466, reh. den. 406 U.S. 911, 92 S.Ct. 1613, 31 L.Ed.2d 823; *State v. Holm*, 67 Wyo. 360, 224 P.2d 500 (1950); *Orcutt v. State*, 366 P.2d 690 (Wyo. 1961); *State v. Hines*, 79 Wyo. 65, 331 P.2d 605 (1958), cert. den. 366 U.S. 972, 81 S.Ct. 1938, 6 L.Ed.2d 1261. It follows, therefore, that incorrect or inapplicable statements of the law in any instructions are properly refused. *Simms v. State*, 492 P.2d 516 (Wyo.1972), cert. den. 409 U.S. 886, 93 S.Ct. 104, 34 L.Ed.2d 142. Defendant's Instructions A, B and D lack the standing under the cases cited to warrant deference. We find that the jury was adequately instructed on the points raised by these instructions, and further elaboration would serve to unduly emphasize the negation of intent propounded by those instructions.

■ Instruction C needs to be considered separately because it represents an amorphous attempt to state the defendant's theory of his defense going to the gravamen of the crime. Rule 51, W.R.C.P. This instruction gave three choices that apparently refer to what could be inferred as defenses. They were:

" * * * (1) that it is his own property, or (2) that it is no one's property, or (3) though he knows it is another's property that the owner has given him permission to take it as he did."

There is nothing from the evidence from which it could be logically inferred that the defendant acquired ownership to the air cooler. He certainly knew from the initial conversation he had with Bulkley that the property was not lacking of an identifiable owner. And, the record is devoid of any evidence that Bulkley had given the air cooler to the defendant "to take it as he did." This instruction simply is not supported by any evidence; and, it is burdened with the additional infirmity of hypothesizing a defense, if it is even an instruction that is intended to impart a defense. The defendant maintained in his argument on instructions that this grapeshot instruction bespoke the defense of the case. In this it failed and the court did not act improperly in rejecting it.

■ The case could be easily dispatched at this point, but a far more serious and searching inquiry is demanded for which the stage has been set by the foregoing discussion. The centripetal question is: Under the circumstances of this case was it fundamental error for the court to fail to instruct on the credible and logical explanation of recently stolen property as supported by the evidence when the defendant has failed to offer an adequate instruction for this purpose?

The incubus of guilt is onerous in these circumstances. It is said in 50 Am.Jur.2d, § 160, p. 346:

" * * * Exclusive possession by the accused of recently stolen goods is, however, a strong circumstance tending to prove guilt, and the corroborating evidence need only be slight to warrant an inference that the accused is the thief. * * * "

See *Newell v. State,* 548 P.2d 8, 13 (Wyo. 1976).

This imposes upon the defendant the burden, indeed almost the duty, to explain his possession of recently stolen property, if he has one at all. Where he has fulfilled this obligation can he be denied an instruction to the jury which adequately enunciates that explanation? The defendant testified that he took possession of the air cooler to get it out of the weather and away from the kids. His explanation, then, pointed to the safe keeping of the air cooling unit. The jury was entitled to treat this explanation as it would and give such weight to it as it might.

The court dealt with a facet of this problem in *Blakely v. State,* 474 P.2d 127 (Wyo. 1970), a case involving the larceny of two calves. The defendant offered an instruction on the retention of the calves in payment of damages as provided by statute. The instruction was refused and prejudicial error was assigned for refusal to instruct on this point. The court said at page 130 of the case:

"When we say, as we do say, that it was necessary for the jury to be apprised of Blakely's main defense and the law pertaining thereto, it becomes apparent that the trial court was required to instruct on such defense by reason of the provisions of Rule 51, W.R.C.P."

It was said in *State v. Hickenbottom,* 63 Wyo. 41, 178 P.2d 119, 131 (1947):

"The foregoing authorities would seem to clearly establish that the defendant's requested instruction lettered 'A,' aforesaid, or one similar to it should have been given by the District Court and that it was prejudicial error to refuse it. We think the defendant had a right to his main defense in the case affirmatively presented to the jury. * * * "

The case of *Martin v. Government of Canal Zone,* 5th Cir., 81 F.2d 913 (1936) involved the request for jury instructions

on the explanation of recently stolen property. The court said:

"The court gave several instructions to the jury wherein it was stated that it was the duty of the jury to convict appellants in the event of the jury making findings from the evidence which were hypothesized in such instructions. The instructions to the jury given by the court made no mention of the evidence tending to prove that Vom Norden lost his money on a bet, not by fraud or theft, and did not refer to the theory of the defense disclosed by the evidence introduced by the appellants. Only the evidence of the guilt of appellants was referred to; that tending to prove their innocence of the crime charged not being stated or commented on. The proposition stated in the above set-out written charge was not covered by any instruction given by the court to the jury. The appellants were entitled to have clearly stated to the jury the theory of defense based on their testimony which negatived the truth of the incriminating evidence introduced by the prosecution. *O'Shaugnessy v. United States* (C.C.A. 5) 17 F.2d 225; *Hendrey v. United States* (C.C.A. 6) 233 F. 5, 18. In the circumstances disclosed, that right of the appellants was denied by the court's refusal to give the above set-out requested written instruction to the jury. The refusal to give that instruction was prejudicial error. \* \* \* The judgment is reversed."

*Blakely* and *Hickenbottom* mandate an instruction on the main defense of the defendant when an instruction thereon has been offered. It is not error where, as here, an instruction on the main theory of the defense has not been offered by the defendant. The *Martin* case supports the requirement that an instruction on the explanation of recently stolen property be given when an instruction of that nature has been offered.

*Garrett v. State*, 87 Tex.Cr. 12, 218 S.W. 1064 (1920) provides:

"We are unable to find in the record any testimony that appellant made an explanation of his possession of recently stolen property. Appellant testified on the trial as to how he came by certain of the property, which he claimed to belong to himself. Under such state of case, we think a charge on the theory of the explanation of possession of recently stolen property would not be called for, but that the defense appearing from the testimony as given should be pertinently submitted. If it should appear that, when confronted with the fact of his possession of said property, or any part thereof, or that the same was found in any room under his control, appellant made any explanation which is admitted in evidence, then the charge on his explanation of such possession should always be given."

■ A defendant found in possession of recently stolen property is in fact confronted with a diminished presumption of innocence if he has no explanation of his possession, nor offers any. He may elect this disadvantageous position and proceed through trial with his right to remain silent. But when a plausible explanation has been offered through his own testimony, one which is consistent with the facts, such an explanation is deserving of jury deliberation, and a specific instruction on the explanation of the possession of recently stolen property should be given if offered. *Mewes v. State*, 517 P.2d 487 (Wyo.1973) touched upon this problem but not the question pertinent to this case. In *Mewes* error was raised for failure of the trial court to instruct on self-defense. Such an instruction was not given nor was error recognized because that instruction contradicted the denial of the defendant that he committed the stabbing. The court said:

"*Blakely* [supra] is clearly distinguishable upon its facts and is inapplicable hereto. The instructions offered in that case directly covered the question of intent and the testimony and theory of defense of the defendant were that although he had taken the calves he had no intention to convert them to his own use, which was a material element of the crime."

This distinction more clearly emphasizes what has already been said with respect to appellant's aborted attempt to properly frame an adequate instruction which he perceived as going to an essential element of the crime. The trial court is not charged with the accountability of the main theory of the defense. This is the *sine qua non* of preparation for trial, a function not to be lightly usurped by the court by presuming a defense, however frail or vigorous it may be. Improper or inadequate instructions, as propounded here, bear the equivalence of no instructions at all.

■ The most that can be ascribed to the omission of an instruction, further setting out defendant's explanation, is harmless error. *Cullin v. State,* supra, and the cases cited therein, should serve to impress the bar of the fatality of failure to offer precise and pertinent instructions. Plain error will not be conferred gratuitously, but only in the rare circumstances warranting its sovereign application. *Hays v. State,* 522 P.2d 1004 (Wyo.1974).

No error, prejudicial or otherwise, could accrue to the defendant by the instructions given, which read:

"INSTRUCTION NO. 7

"Six essential elements are required to be proved in order to establish the offense of grand larceny in the Information:

"First: The act of stealing, taking and carrying away the personal goods of another;

"Second: Doing such act unlawfully and feloniously;

"Third: Felonious intent on the part of the Defendant, existing at the time of the taking and carrying away;

"Fourth: The value of the personal goods being $100.00 or more; and

"Fifth and Sixth: That such act was committed in Sheridan County, Wyoming, on November 12, 1975.

"As stated before, the burden is always upon the prosecution to prove beyond a reasonable doubt every essential element of the crime charged."[3]

This instruction was buttressed by the following instruction of definitions:

"INSTRUCTION NO. 12

" 'Unlawfully' means contrary to law, so, to do an act 'unlawfully' means to do something which is contrary to law.

" 'Feloniously' means that there is no color of right or excuse for the act and that the intent must be to deprive the owner permanently of his property."

Instruction No. 12 gave impetus to Instruction No. 7. It became repetitious of Instruction No. 7. The sufficiency of the defendant's main theory of his defense was embodied in these two instructions. *Blakely v. State,* supra. The jury had a comprehensible grasp of defendant's defense from the evidence which enabled it to anchor to the instructions offered. *Blakely v. State,* supra, and *State v. Hickenbottom,* supra, are distinguishable in that proper instructions were offered in those cases obviating a factitious finding by this court.

The evidence weighed as it was, resulted in an adverse verdict. It cannot be said the verdict was reached in a vacuum. The evidence contradicts the testimony of the defendant in his several laudable assertions that he intended to maintain the cooling unit in safekeeping. Part of this contradiction is dealt with in the second error raised. It is sufficient to conclude here that for want of a proper instruction offered by the defendant, the error urged lacks stature to be considered error.

### LACK OF FOUNDATION IN TELEPHONE CONVERSATION

■ Facts previously alluded to note a telephone call by Bulkley to the telephone number of the trailer space occupied by the defendant, his wife and step-children. The recipient of this call identified himself as "Benson." Among other matters discussed, he was queried as to the whereabouts of the mobile home air cooler. The defendant denied having knowledge of it. Bulkley had previously talked to the defendant and there was no doubt from his testimony who he was talking to. The foundational re-

---

3. The trial judge repeated this identical instruction as "Instruction No. 11."

quirements of (1) the identity of the speaker, and (2) recognition of the declarant's voice, the test set forth in *State v. Parmely*, 65 Wyo. 215, 199 P.2d 112, 116 (1948), were met in this instance. Knowledge peculiar to the parties was exchanged in this conversation, giving circumstantial reliability to the identification of the defendant. McCormick on Evidence, 2d Ed., H.B. at p. 554; *State v. Glisan*, 2 Or.App. 314, 465 P.2d 253, 254 (1970). A reasonable basis for identification of the telephone recipient is sufficient to meet the test of admissibility of the conversation. This was amplified by the testimony. *State v. Godinez*, 111 Ariz. 397, 531 P.2d 154 (1975); *State v. Williamson*, 210 Kan. 501, 502 P.2d 777 (1972); *State v. Elie*, 4 Wash.App. 352, 481 P.2d 465 (1971); *King v. State*, 80 Nev. 269, 392 P.2d 310 (1964); *Grimes v. State*, 365 P.2d 739 (Okl. Cr.App.1961); *Kansas Electric Supply Company, Inc. v. Dun and Bradstreet, Inc.*, 10th Cir. 1971, 448 F.2d 647, cert. den. 405 U.S. 1026, 92 S.Ct. 1289, 31 L.Ed. 486.[4]

The finality of identification is a fact to be weighed by the jury. The trial court properly found the necessary elements of admissibility to be present. *State v. Williamson*, supra. The jury assigned the probative value to this evidence and it found by sufficient quantum of proof the defendant answered the telephone. We have no basis to find otherwise.

Affirmed.

ROSE, Justice, dissenting, with whom McCLINTOCK, Justice, joins.

I dissent. As indicated in the majority opinion, possession of recently stolen property imposes an onerous burden upon a defendant to explain his possession. The majority opinion concedes that the defendant gave such an explanation through his testimony which pointed to the safekeeping of the air-cooling unit. Yet, because the defendant offered an improperly framed instruction on this main theory of his defense, the majority concludes that the trial court was warranted in refusing to give an instruction which affirmatively apprised the jury of the defendant's explanation of possession and its effect. I view this conclusion as an extreme divergence from previous rulings of this court and from fundamental notions of due process.

I fail to see the distinction, suggested by the majority opinion, between this case and the cases of *Blakely v. State*, Wyo., 474 P.2d 127 (1970), and *State v. Hickenbottom*, 63 Wyo. 41, 178 P.2d 119 (1947). In *Blakely*, we said:

"We do not pretend to say Blakely's requested instruction A was necessarily free from criticism. Neither do we say instruction B was entirely correct. However, the two requests made by defendant, after he offered substantial evidence tending to *show that he intended to hold Hatch's calves for damages and did not intend to steal them*, were at least sufficient to apprise the court of the theory of defendant's defense and to make it incumbent upon the court to give one or both of the instructions or to otherwise properly instruct on the matter of intent and defendant's theory of the case. [Emphasis supplied]

\* \* \* \* \* \*

4. On August 26, 1977, this court adopted the Wyoming Rules of Evidence, effective January 1, 1978. The following provision is consistent with the cases cited in this opinion and could be adapted to the facts of this case and cover the admissibility of the evidence pertaining to the telephone conversation. Rule 901(a) and (b)(6), WRE, is as follows:

"(a) *General provision.* The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

"(b) *Illustrations.* By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

\* \* \* \* \* \*

"(6) *Telephone conversations.* Telephone conversations, by evidence that a call was made to the number assigned at the time by the telephone company to a particular person or business, if (A) in the case of a person, circumstances, including self-identification, show the person answering to be the one called, or (B) in the case of a business, the call was made to a place of business and the conversation related to business reasonably transacted over the telephone."

"In order to meet the basic requirements of due process, it was necessary for the court in Blakely's trial to instruct on defendant's theory of the case and to instruct correctly on the need for the jury to find, in order to convict Blakely, that he held Hatch's calves with the intent to steal them."

In the case at Bar, the language of defendant's Instruction C clearly apprised the trial court of the theory of defendant's defense—a taking of another's property under an honest but mistaken belief. More generally, the trial court had before it evidence of defendant's explanation of possession, to-wit: that he held the air-cooling unit for purposes of safekeeping with no intent to steal it. The combination of these two aspects of defendant's presentation made it incumbent upon the trial court to properly instruct on the matter of intent *and* the defendant's theory. It is no answer to this principle to say that defendant tendered an imperfect instruction. *Blakely* imposes a duty to instruct on the main defense theory, even if the tendered instruction is incorrect.[1] I would even go so far as to hold that, in certain situations, Rule 51, W.R. C.P., imposes a *duty* on the trial court to instruct on a defendant's explanation of possession of recently stolen property *even if no instruction thereon is offered.* See, *State v. Cox,* 240 Iowa 248, 34 N.W.2d 616 (1948). The question is not one of a trial court's accountability, it is one of a defendant's entitlement to due process.

Furthermore, it is no answer to the above-mentioned principles to say that the defendant's defense theory was covered by the other instructions, dealing with the intent required to establish the offense of grand larceny. First, this argument was presented *and rejected* by this court in *Blakely v. State,* supra, and *State v. Hickenbottom,* supra. In *Blakely,* we said:

"It was urged in *Hickenbottom* that other instructions on the matter of criminal intent were sufficient without the instruction offered by defendant. For example, the jury was instructed that: "' * * * the felonious intent charged in the information is one of the material elements of the crime charged and it is incumbent on the State to prove such felonious intent beyond all reasonable doubt.'

Even this kind of instruction was absent in Blakely's trial. The state attempts to argue nevertheless that it was sufficient for the court to tell the jury the state must prove every material allegation, including that defendant 'did wilfully, maliciously and unlawfully steal.'

"Speaking for the court in *Hickenbottom,* at 178 P.2d 128, Chief Justice Riner conceded the instructions there dealt with the matter of criminal intent. He said, however, *the instructions nowhere af-*

1. We recently held, in *Thomas v. State,* Wyo., 562 P.2d 1287, 1292–1293:

"The remaining questions involve assertions of error based upon the failure of the trial judge to give certain tendered instructions. The instruction denominated as 'B' was as follows:

"'YOU ARE INSTRUCTED that, if from the evidence in this case, you find that the vehicle being operated by Defendant at the time of the accident possessed a defect that deprived Defendant of control of that vehicle, you must acquit the Defendant.'

The failure to give an instruction embodying this principle was error, which alone would require reversal.

"There was testimony of Marvin D. Robinson, an expert mechanic, presented by defendant, that the car defendant was driving had a defect in the steering system which could have resulted in a loss of steering con-

trol so that the wheels would have cramped when steering and he would have been unable to 'control the front steering at all.' *Although there is considerable rebuttal of this and contention that this did not come into effect or operation until after defendant originally lost control of his car, this in no manner diminishes the right to have the jury instructed upon defendant's theory of the case if there is competent evidence to sustain such theory, Blakely v. State, Wyo., 474 P.2d 127, 129; State v. Hickenbottom, 63 Wyo. 41, 178 P.2d 119, 131.* Although we do not approve nor hold that this instruction is a complete or proper statement of the law because, among other things, it does not set out that the defect must be a proximate cause of the accident, it was at least sufficient to advise the court of defendant's theory and should have been given, *Blakely v. State,* supra." [Emphasis supplied]

firmatively stated that an honest belief on the part of defendant in his ownership of the sheep would be a good defense. The writer of the opinion then proceeded to review a number of cases supporting his position.

"He concluded, at 178 P.2d 131, that it was made clear from the authorities reviewed that Hickenbottom's requested instruction, 'or one similar to it,' should have been given; that it was prejudicial error to refuse it; and that defendant had a right to have his main defense in the case 'affirmatively' presented to the jury.

\*      \*      \*      \*      \*      \*

". . . In the case before us, we have already indicated we consider the court's failure to cause Blakely's main defense to be affirmatively presented to the jury sufficiently serious to amount to a denial of due process." [Emphasis supplied]

If other instructions on criminal intent were insufficient in those cases, how can we now say that similar instructions in this case transform a denial of due process into harmless error? The duty imposed upon the trial court, once it is apprised of the defense theory, is to *affirmatively* present that theory to the jury. General instructions on intent cannot and do not discharge this responsibility. In light of these conclusions, I would have reversed the appellant's conviction and remanded the case for a new trial.